IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHARLES M.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 19 C 02663 |
| v. | ) |
| | ) Magistrate Judge Beth W. Jantz |
| KILOLO KIJAKAZI, Acting | ) |
| Commissioner of Social Security,[2] | ) |
| | ) |
| Defendant. | ) |
| | ) |

# MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Ronald C.'s application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's motion for summary judgment [Dkt. 13, Pl.'s Mot.] is granted, and the Commissioner's cross-motion for summary judgment [Dkt. 19, Def.'s Mot.] is denied.

---

[1] In accordance with Internal Operating Procedure 22, Privacy in Social Security Opinions, the Court refers to Plaintiff by his first name and the first initial of his last name.

[2] Pursuant to Federal Rule of Civil Procedure 25(d), Commissioner Kilolo Kijakazi has been substituted for her predecessor.

**BACKGROUND**

**I.     Procedural History**

On May 16, 2015, Plaintiff filed a claim for DIB and SSI, alleging disability since November 23, 2011 due to herniated discs (including past discectomies), depression and anxiety, dyslexia, asthma, and allergies. [Dkt. 11-1, R. at 79.] Plaintiff's claim was denied initially and upon reconsideration, after which he timely requested a hearing before an Administrative Law Judge ("ALJ"), which was held on September 19, 2017. [R. 46.] A supplemental hearing was held on March 6, 2018. [Dkt. 12-1, R. 669.] Plaintiff personally appeared and testified at both hearings and was represented by counsel. [R. 43, 669.] Vocational expert ("VE") Edward Pagella also testified at the initial hearing, while VE Amy Mallory testified at the supplemental hearing. [R. 43, 669.] On May 2, 2018, the ALJ denied Plaintiff's claim for benefits, finding him not disabled under the Social Security Act. [R. 82.] The Social Security Administration Appeals Council then denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017).

**II.    The ALJ's Decision**

The ALJ analyzed Plaintiff's claim in accordance with the Social Security Administration's five-step sequential evaluation process. [R. 19.] The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of November 23, 2011. [R. 21.] At step two, the ALJ concluded that Plaintiff had the following severe impairments: chronic lower back pain, status post-lumbar spine surgery; asthma; status post-septoplasty; obesity; agoraphobia with panic disorder; social anxiety; and mild cognitive impairment. [R. 21.] The ALJ concluded at step three that his impairments, alone or in combination, did not meet or medically equal one of

the Social Security Administration's listings of impairments (a "Listing"). [R. 21-22.] Before step four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work, except that Plaintiff must never climb ladders, ropes, or scaffolds; could frequently climb ramps or stairs; and could occasionally balance, stoop, crouch, kneel, or crawl. Plaintiff also must avoid all exposure to unprotected heights, must avoid even moderate exposure to respiratory irritants such as fumes, odors, dusts, and gases, and must avoid concentrated exposure to extreme heat, extreme cold, wetness, or humidity. [R. 28-29.] The ALJ further noted that Plaintiff was limited to work that required performance of no more than simple or routine tasks, that could involve only routine changes in the work setting, and that could be performed at a variable pace (with only end-of-day production requirements, as opposed to hourly or other period production quotas). [R. 28-29]. Plaintiff was further limited to work with no more than incidental contact with the public. [R. 28-29.] At step four, the ALJ concluded that Plaintiff would be unable to perform his past relevant work as a shipping and receiving clerk. [R. 34.] At step five, based upon the VE's testimony and Plaintiff's age, education, work experience and RFC, the ALJ concluded that Plaintiff could perform jobs existing in significant numbers in the national economy, leading to a finding that he is not disabled under the Social Security Act. [R. 34-35.]

## DISCUSSION

**I.     Judicial Review**

Under the Social Security Act, a person is disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine disability within the meaning of the Social Security Act, the ALJ conducts a five-step inquiry, asking

3

whether: (1) the claimant has performed any substantial gainful activity during the period for which he claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the RFC to perform his past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. 20 C.F.R. § 416.920(a). "A finding of disability requires an affirmative answer at either step three or step five." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). "The claimant bears the burden of proof at steps one through four, after which at step five the burden shifts to the Commissioner." *Id.*

Judicial review of the ALJ's decision is limited to determining whether it adequately discusses the issues and is based upon substantial evidence and the proper legal criteria. *Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation omitted). "To determine whether substantial evidence exists, the court reviews the record as a whole but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses." *Beardsley v. Colvin*, 758 F.3d 834, 836-37 (7th Cir. 2014). While this review is deferential, "it is not intended to be a rubber-stamp" on the ALJ's decision. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018). The Court will reverse the ALJ's finding "if it is not supported by substantial evidence or if it is the result of an error of law." *Id.*, at 327.

The ALJ also has a basic obligation to develop a full and fair record, and to "build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley*, 758 F.3d at 837. Although the ALJ is

not required to mention every piece of evidence in the record, the ALJ's analysis "must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001); *accord Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). The ALJ "must explain [the ALJ's] analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014) (quoting *Briscoe*, 425 F.3d at 351).

## II.   Analysis

Plaintiff makes three arguments challenging the ALJ's decision, including: (1) the ALJ erroneously discounted the opinions of Plaintiff's treating physician, Dr. Nicholas Tzanetakos; (2) the ALJ failed to adequately support his mental functional capacity finding; and (3) the ALJ erroneously discounted Plaintiff's subjective account of his symptoms. After reviewing the record and the briefs submitted by the parties, this Court concludes that the ALJ failed to properly consider the required factors in assigning weight to Dr. Tzanetakos' opinions. Because this failure alone warrants remand, the Court does not reach Plaintiff's additional arguments.

Plaintiff argues that the ALJ erred in assigning only some weight to the opinions of his treating physician, Dr. Nicholas Tzanetakos, and in rejecting the functional limitations identified by Dr. Tzanetakos. [Dkt. 27 at 7-10.] A treating physician's opinion on the nature and severity of a medical condition is entitled to controlling weight if it is "well-supported" by medical findings and "not inconsistent with the other substantial evidence" in the record.[3] 20 C.F.R. §404.1527(c); *see Gerstner v. Berryhill*, 879 F.3d 257, 261 (7th Cir. 2018). If a treating

---

[3] The "treating physician rule" has been rescinded for claims filed after March 27, 2017 "to eliminate the 'controlling weight' instruction." *Kaminski v. Berryhill*, 894 F.3d 870, 874, n.1 (7th Cir. 2018) (comparing 20 C.F.R. § 404.1527(c) (for claims filed before March 27, 2017), with 20 C.F.R. § 404.1527(c) (for claims filed on or after March 27, 2017)).

physician's opinion is not given controlling weight, the ALJ must determine what weight it merits by considering the following factors: (1) the length, nature, and extent of the treatment relationship; (2) the frequency of examination; (3) the physician's specialty; and (4) the consistency and supportability of the opinion. 20 C.F.R. § 404.1527(c); *Gerstner*, 879 F.3d at 263. The ALJ "must offer good reasons for discounting the opinion of a treating physician." *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011) (internal quotation omitted).

Plaintiff first saw Dr. Tzanetakos in January 2016, at which time he reported to Dr. Tzanetakos that despite taking numerous respiratory medications, he continued to have shortness of breath, and that he had been using his nebulizer every three hours. [R. 456.] In the objective portion of the report, Dr. Tzanetakos noted that Plaintiff has distant and diminished breath sounds, but no wheezes or respiratory distress. Dr. Tzanetakos noted Plaintiff had normal range of motion and no edema or tenderness. [R. 458.] In April 2016, Plaintiff reported chronic low back pain following disc surgeries of the lumbar spine. [R. 550.] Plaintiff indicated that pain radiates down to the buttock area and close to the knees. [R. 550.] Plaintiff wanted to try a non-opiate treatment for his pain. [R. 550]. At that visit, Dr. Tzanetakos again noted that Plaintiff had distant and diminished breath sounds, normal range of motion, and no edema or tenderness. [R. 551.] Dr. Tzanetakos further noted that Plaintiff had an abnormal Straight Leg Raise Test. [R. 551.] Later in April 2016, Plaintiff returned to Dr. Tzanetakos complaining of pulmonary symptoms; Dr. Tzanetakos reviewed records from Plaintiff's treatment by a prior doctor and noted that prior pulmonary function testing was consistent with chronic obstructive pulmonary disease. [R. 553.] Dr. Tzanetakos again noted distant and diminished breath sounds. [R. 554.] Dr. Tzanetakos further noted that Plaintiff was responding well to gabapentin for his back pain. [R. 557.]

6

In August 2016, Plaintiff returned to Dr. Tzanetakos complaining of back pain and seeking medication refills. [R. 557.] Plaintiff reported that gabapentin took the edge off from his pain, but he was nonetheless pursuing disability benefits and sought to have Dr. Tzanetakos fill out a functional capacity evaluation form. [R. 557.] Dr. Tzanetakos did not fill out the form that day because the appointment was not made for the purpose of completing the form. [R. 557.] Dr. Tzanetakos noted an abnormal Straight Leg Raise Test and distant and diminished breath sounds. [R. 559.] He again noted that Plaintiff had a normal range of motion and no edema or tenderness. [R. 559.]

Plaintiff saw Dr. Tzanetakos a week later for the purpose of filling out the functional capacity questionnaire. [R. 560.] Dr. Tzanetakos recounted that Plaintiff had two back surgeries (one in 2006 and one in 2007) on the L5-S1 level, and noted that Plaintiff had been having renewed back troubles since 2010. [R. 560.] Dr. Tzanetakos noted that Plaintiff's pain is mostly in his left side, which radiates to the posterior thigh and can be "quite severe at times." [R. 560.] Dr. Tzanetakos again detailed an abnormal Straight Leg Raise Test and distant and diminished breath sounds, but normal range of motion and no edema or tenderness. [R. 561.]

Dr. Tzanetakos noted on the functional evaluation form that Plaintiff suffered from degenerative disc disease with a history of lumbar surgeries, and chronic obstructive pulmonary disease with frequent flare ups. [R. 579.] He noted that Plaintiff had moderate to severe pain in his lower back and thigh and that his COPD symptoms were severe at times; he further identified Plaintiff's decreased breath sounds secondary to emphysema. [R. 579.] Dr. Tzanetakos indicated that Plaintiff's pain or other symptoms were frequently severe enough to interfere with the attention and concentration needed to perform even simple work tasks. [R. 579.] In terms of specific limitations, Dr. Tzanetakos noted that: (1) Plaintiff could not sit or stand for more than a

half hour at a time; (2) Plaintiff could both sit and stand/walk for less than 2 hours during an 8-hour work day; (3) Plaintiff needed to walk every 45 minutes during the work day and needs a job that permits shifting positions at will; (4) Plaintiff would need hourly unscheduled breaks during the work day due to his back pain; (5) Plaintiff could frequently lift less than ten pounds, occasionally lift ten pounds, rarely lift 20 pounds, and never lift 50 pounds; and (6) Plaintiff would need to be absent more than four days per month as a result of impairments or treatment. [R. 579-81.] Finally, Dr. Tzanetakos identified June 2010 as the start date for the onset of Plaintiff's symptoms. [R. 581.]

The ALJ assigned only "some" weight to Dr. Tzanetakos' assessment of Plaintiff's functional limitations, "to the extent that Dr. Tzonetakos [sic] opined the claimant was limited by his physical impairments." [R. 33.] The ALJ further noted, however, that "the physician opined to limitations for the claimant that exceeded the medical evidence including Dr. Tzonetakos's [sic] treatment notes." [R. 33.] The only specific treatment notes cited by the ALJ were those documenting "examination findings of normal strength and normal reflex responses in the claimant's lower extremities." [R. 33.] The ALJ also noted that "abnormality in the claimant's ability to ambulate was never documented by the physician." [R. 33.] Finally, the ALJ surmised that the fact that "claimant met with the physician specifically to have the [RFC] questionnaire completed . . . suggests the possibility that at least some of the limitations documented were based on the claimant's report and not the objective treatment record." [R. 33.]

The ALJ failed to apply the correct legal standard in assessing Dr. Tzanetakos' opinions and also failed to build a logical bridge between the record and his conclusions, however. Even if the ALJ was not obligated to assign Dr. Tzanetakos' opinions controlling weight, the ALJ was required to consider the factors identified in 20 C.F.R. §404.1527(c) in assigning weight to Dr.

8

Tzanetakos' opinions. *Gerstner*, 879 F.3d at 263. The ALJ failed to do so. Although the ALJ opined that functional limitations identified by Dr. Tzanetakos "exceeded the medical evidence including Dr. Tzonetakos' [sic] treatment notes," R. 33, this statement "is a conclusion, not a reason (or reasons)." *Mueller v. Astrue*, 493 F. App'x 772, 776 (7th Cir. 2012). The ALJ offered only two *reasons* for discounting Dr. Tzanetakos' opinions regarding Plaintiff's functional limitations: (1) that Dr. Tzanetakos' records detailed normal reflexes, strength, and ambulation; and (2) that Dr. Tzanetakos might have relied on "claimant's report and not the objective treatment record" because "claimant met with the physician specifically to have the [RFC] questionnaire completed." [R. 33.] For numerous reasons, the ALJ's reliance on these two bases in rejecting Dr. Tzanetakos' opinion constitutes legal error warranting remand.

First, the ALJ never identified, let alone discussed, "the length, nature, and extent of" Plaintiff's treatment relationship with Dr. Tzanetakos or the "frequency" with which Dr. Tzanetakos treated Plaintiff. See 20 C.F.R. § 404.1527(c) (requiring consideration of these factors). While Dr. Tzanetakos began treating Plaintiff in January 2016, Plaintiff was a regular patient of Dr. Tzanetakos in the months leading up to the RFC evaluation (and continued to be a regular patient thereafter). Dr. Tzanetakos became Plaintiff's primary care physician in early 2016 after Plaintiff moved to a new area and, as Plaintiff's primary care physician, Dr. Tzanetakos had access to (and records indicate that he reviewed, *see* R. 553) records from specialists who treated Plaintiff.

Moreover, although the ALJ appeared to consider the extent to which Dr. Tzanetakos' functional capacity opinions cohered with certain of Dr. Tzanetakos' earlier records, the ALJ did not assess whether Dr. Tzanetakos' opinions were consistent with the entirety of Plaintiff's

9

medical record. *See* 20 C.F.R. § 404.1527(c)(2)(ii)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion.").

And the record as a whole contains at least some objective findings that lend support to Dr. Tzanetakos' opinions. Among other things, Plaintiff had undergone two prior back surgeries; a spirometry test shortly after Dr. Tzanetakos' evaluation revealed that Plaintiff had moderate airway obstruction, [R. 542]; and a subsequent MRI revealed severe bilateral neural foramen narrowing, [R. 667-668]. While the ALJ was not required to consider every piece of evidence in the broader medical record in assigning weight to Dr. Tzanetakos' opinions, the ALJ's opinion does not reflect any consideration of the broader medical record in assessing Dr. Tzanetakos' opinions. The ALJ's failure to meaningfully consider or discuss most of the required factors on its own warrants remand. *See, e.g., Lambert v. Berryhill*, 896 F.3d 768, 775-76 (7th Cir. 2018) (remanding in part because "the ALJ did not explain his view of [the required] factors in assigning little weight" to a treating physician's opinions).

Even if that were not the case, neither of the two reasons the ALJ provided for discounting Dr. Tzanetakos' functional capacity assessment withstands scrutiny. First, the ALJ noted that Plaintiff had normal ambulation, reflexes, and strength at prior visits with Dr. Tzanetakos. These were the only findings in the record that the ALJ identified as inconsistent with Dr. Tzanetakos' opinions. But the ALJ never explained how these findings were inconsistent with Dr. Tzanetakos' opinions. While normal strength, ambulation, and reflexes may be relevant to Plaintiff's functional capacity, they certainly are not the *only* factors relevant to Plaintiff's functional capacity. *See, e.g., Martin v. Saul*, 950 F.3d 369, 375 (7th Cir. 2020) (remanding in part because ALJ relied on plaintiff's ability to walk without a limp during medical examination to the exclusion of the remaining evidence in the record). Indeed, having normal strength, ambulation, and reflexes

10

during a medical examination says little about whether an individual can walk for more than a half hour at a time or for more than two hours during a workday—they might be *necessary* conditions, but they are not *sufficient* conditions. Moreover, here, Dr. Tzanetakos identified two conditions that caused Plaintiff's functional limitations: degenerative disc disease with a history of lumbar surgeries, and chronic obstructive pulmonary disease with frequent flare-ups. [R. 579]. While findings of normal strength, ambulation, and reflexes may speak to the severity of Plaintiff's degenerative disc disease, those findings say nothing about the extent to which Plaintiff was limited by his COPD, which records suggest was worsened by exertion (R. 461). *See Joseph Z. v. Saul*, No. 19 C 2354, 2020 WL 5253885, at *5 (N.D. Ill. Sept. 3, 2020) (remanding where ALJ's cited plaintiff's strength and lack of muscle atrophy but "failed to explain why those characteristics contradicted [the treating physician's] opinions, which were founded on a variety of [plaintiff's] diagnoses"). In short, by exclusively considering Plaintiff's normal reflexes, strength, and ambulation in assessing the consistency and supportability of Dr. Tzanetakos' opinions, the ALJ failed to build a logical bridge between the record and his conclusions. *See, e.g., Charles B. v. Saul*, No. 18 C 1377, 2019 WL 3557055, at *9 (N.D. Ill. Aug. 1, 2019) ("Without an explanation of how the ALJ reached his conclusion that Dr. Masood's opinions were inconsistent with Charles's normal muscle strength in his extremities, the ALJ failed to build the requisite 'logical bridge' between the evidence and his rejection of Dr. Masood's opinions.")

The ALJ's second reason for discounting Dr. Tzanetakos' functional capacity opinion is nothing more than speculation, untethered from the record. The ALJ suggested that Dr. Tzanetakos might have relied on "claimant's report and not the objective treatment record" because "claimant met with the physician specifically to have the [RFC] questionnaire completed." [R. 33.] As an initial matter, the ALJ provided no reason why the fact that Plaintiff met with his

11

primary care physician to complete the functional capacity assessment means that Dr. Tzanetakos necessarily must have relied only on Plaintiff's subjective complaints. *See Adaire v. Colvin*, 778 F.3d 685, 688 (7th Cir. 2015) (remanding where "administrative law judge neither explained why she thought the physician was 'apparently sympathetic' nor why she thought that, if so, he must have given false evidence."). Additionally, as noted above, Plaintiff was a regular patient of Dr. Tzanetakos in the months leading up to the RFC evaluation, and continued to be a regular patient thereafter.

   Finally, it should be noted that, on appeal, the Commissioner barely attempts to defend the ALJ's treatment of Dr. Tzanetakos on its own merits. Instead, the Commissioner provides a bevy of reasons why the ALJ *could* have rejected Dr. Tzanetakos opinions: that Plaintiff had what the Commissioner views as unremarkable objective findings (beyond the normal reflexes, strength, and ambulation that the ALJ actually cited) in his visits with Dr. Tzanetakos; that Plaintiff had only a limited history with Dr. Tzanetakos; that Dr. Tzanetakos did not connect any specific medical findings to each individual functional capacity restriction he identified; that Dr. Tzanetakos opined that Plaintiff's work limitations began in 2010 when Plaintiff was still working full time; that Plaintiff continued to smoke two packs per day despite his lung problems; and that Dr. Tzanetakos offered conservative treatment, among other reasons. A problem with the Commissioner's position, however, is that the ALJ simply did not reject Dr. Tzanetakos's opinions for the litany of reasons now identified by the Commissioner. And, the *Chenery* doctrine limits this Court's review to the ALJ's actual reasoning, which may not be expanded by agency lawyers' arguments on appeal. *See Kastner v. Astrue*, 697 F.3d 642, 648 (7th Cir. 2012) ("Under the *Chenery* doctrine, the Commissioner's lawyers cannot defend the agency's decision on grounds that the agency itself did not embrace."). It is possible that, on remand, the ALJ again

rejects Dr. Tzanetakos' opinions for some or all of the reasons the Commissioner identifies. But it is not the task of this Court to evaluate Dr. Tzanetakos' opinions in a vacuum; it is this Court's job to evaluate the ALJ's reasoning, which in this instance was flawed.

Because the ALJ's failure to properly consider Dr. Tzanetakos' opinions is reversible error, the Court need not consider Plaintiff's remaining arguments for remand.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment [13] is granted, and the Commissioner's motion for summary judgment [19] is denied. The Commissioner's decision is reversed, and this matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

**SO ORDERED.**

Date: 12/27/2021

BETH W. JANTZ
United States Magistrate Judge